UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

-------------------------------------------------------------------x
In re                                          :   Chapter 11
                                               :
TOPSPIN MEDICAL, INC.,                         :   Case No. 10-        (   )
                                               :
            Debtor.                            :
                                               :
-------------------------------------------------------------------x

## DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, Delaware 19899
Attn: David M. Fournier (No. 2812)
Attn: James C. Carignan (No. 4230)

PROPOSED ATTORNEYS FOR
THE DEBTOR AND DEBTOR IN
POSSESSION

Dated: July 12, 2010

#12624273 v6

**TABLE OF CONTENTS**

SECTION I -- INTRODUCTION .................................................................................... 1

    A.     **Definitions and Interpretation** ............................................................ 1

    B.     **Disclosure Statement** ........................................................................ 1

    C.     **Notice to Holders of Claims and Interests** ........................................ 4

    D.     **Overview of the Plan** .......................................................................... 5

        1.     **Classification and Treatment of Claims** ................................ 5

SECTION II -- PLAN VOTING INSTRUCTIONS AND PROCEDURES .................. 8

    A.     **Impairment and Eligibility to Vote** ................................................... 8

    B.     **Solicitation Package** .......................................................................... 10

    C.     **Voting Procedures, Ballots, and Voting Deadline** ........................... 10

SECTION III -- BACKGROUND OF THE DEBTOR AND THE CHAPTER 11 CASE ........... 11

    A.     **Present Status of the Chapter 11 Case** ............................................... 11

    B.     **Corporate Structure** .......................................................................... 11

    C.     **Former Business Operations of the Debtor** ....................................... 12

    D.     **Capital Structure** .............................................................................. 12

    E.     **Events Leading to the Chapter 11 Filings** ........................................ 12

    F.     **Pending Business Acquisition** .......................................................... 13

SECTION IV -- THE PLAN ...................................................................................... 13

    A.     **Classification of Claims and Interests** .............................................. 13

        1.     **Summary** ................................................................................. 13

        2.     **Classification** ......................................................................... 13

    B.     **Treatment of Administrative Claims, Professional Compensation and Reimbursement Claims and Priority Tax Claims** ........................... 15

        1.     **Administrative Claims** ........................................................... 15

#12624273 v6

|   | 2. | Priority Tax Claims. | 16 |
|---|----|----|----|
|   | 3. | Professional Fees. | 16 |
| C. | | Treatment of Classified Claims and Interests | 16 |
|   | 1. | Other Priority Claims (Class 1) | 16 |
|   | 2. | General Unsecured Claims (Class 2) | 16 |
|   | 3. | Medgenesis Claims (Class 3) | 17 |
|   | 4. | Equity Interests (Class 4) | 17 |
| D. | | Acceptance or Rejection of The Plan | 17 |
|   | 1. | Classes of Impaired Claims Entitled to Vote | 17 |
|   | 2. | Classes Deemed to Accept the Plan | 18 |
|   | 3. | Nonconsensual Confirmation | 18 |
| E. | | Means of Implementation of Plan | 18 |
|   | 1. | Compromise of Controversies. | 18 |
|   | 2. | Vesting of Assets. | 18 |
|   | 3. | Continued Corporate Existence. | 19 |
|   | 4. | Reorganized Constituent Documents. | 19 |
|   | 5. | Officers and Directors. | 19 |
|   | 6. | Corporate Action. | 19 |
|   | 7. | Reverse Stock Split | 20 |
|   | 8. | Sources of Cash for Plan Distribution. | 20 |
| F. | | Treatment of Executory Contracts and Unexpired Leases | 20 |
|   | 1. | Assumption of Executory Contracts and Unexpired Leases. | 20 |
|   | 2. | Claims Based on Rejection of Executory Contracts or Unexpired Leases. | 21 |
|   | 3. | Indemnification of Directors, Officers and Employees. | 21 |
|   | 4. | Compensation and Benefit Programs. | 21 |

#12624273 v6

| | | | |
|---|---|---|---|
| G. | | Provisions Governing Distributions | 22 |
| | 1. | Date of Distributions | 22 |
| | 2. | Disbursing Agent | 22 |
| | 3. | Delivery of Distributions and Undeliverable or Unclaimed Distributions. | 22 |
| | 4. | Setoff and Recoupment | 23 |
| | 5. | Manner of Payment Under Plan of Reorganization. | 23 |
| | 6. | Withholding and Reporting Requirements. | 23 |
| H. | | Deadline for filing Proofs of Claim | 23 |
| | 1. | Prosecution of Objections to Claims. | 24 |
| | 2. | Estimation of Claims. | 24 |
| | 3. | Payments and Distributions on Disputed Claims. | 24 |
| I. | | CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE | 24 |
| | 1. | Conditions Precedent to Confirmation. | 24 |
| | 2. | Conditions Precedent to the Effective Date. | 24 |
| | (a) | the Confirmation Order shall have been entered on the docket for the Chapter 11 Case; | 24 |
| | (b) | the Confirmation Order shall have become a Final Order; | 25 |
| | (c) | all authorizations, consents and approvals determined by the Debtor to be necessary to implement the terms of the Plan shall have been obtained; | 25 |
| | (d) | the fees and expenses payable under Section 2.3 of the Plan requests for which have been submitted to the Debtor, shall have been paid in full; | 25 |
| | (e) | all statutory fees and obligations then due and payable to the Office of the United States Trustee shall have been paid and satisfied in full; | 25 |
| | (f) | all other actions necessary to implement the terms of the Plan shall have been taken; and | 25 |

#12624273 v6

(g)    all requirements, rules and regulations of Israeli law related to the issuance of Reorganized Common Stock and the Reorganized Warrants and related to the Reorganized Constituent Documents shall have been satisfied. .....25

3.    **Waiver of Conditions.**....................................................................25

4.    **Modification of Plan.** ................................................................25

5.    **Effect of Withdrawal or Revocation.** .......................................25

6.    **Reservation of Rights.** ..............................................................25

7.    **Substantial Consummation of Plan.** .......................................26

J.    **EFFECT OF PLAN CONFIRMATION** ............................................26

1.    **Binding Effect.** ..........................................................................26

2.    **Discharge of Claims.** .................................................................26

3.    **Releases.**....................................................................................26

4.    **Exculpation and Limitation of Liability.**................................26

5.    **Injunction.** ................................................................................27

6.    **Term of Bankruptcy Injunction or Stays.** ..............................27

7.    **Termination of Subordination Rights and Settlement of Related Claims.** .....................................................................................27

8.    **Preservation of Rights of Action.** ............................................27

SECTION V -- CONFIRMATION OF THE PLAN. ....................................................28

A.    **Introduction** ......................................................................................28

B.    **Conditions to Confirmation and Effective Date** ...............................28

C.    **Voting Procedures and Standards** .....................................................28

D.    **Acceptance**.........................................................................................29

E.    **Confirmation and Consummation** .....................................................29

1.    **Best Interests of Holders of Claims and Equity Interests**....................31

2.    **Financial Feasibility** .................................................................32

| | | | |
|---|---|---|---|
| | 3. | Acceptance by Impaired Classes | 32 |
| | 4. | Cramdown | 32 |
| | 5. | Classification of Claims and Equity Interests | 33 |
| SECTION VI -- CERTAIN RISK FACTORS TO BE CONSIDERED. | | | 34 |
| A. | | Risk That Distributions Will Be Less Than Estimated by the Debtor | 34 |
| B. | | Litigation Risks | 34 |
| C. | | Bankruptcy Risks | 34 |
| | 1. | Objection to Classifications | 34 |
| | 2. | Risk of Non-Confirmation of the Plan | 35 |
| | 3. | Risk that Non-Classified Claims and Other Priority Claims will Not be Paid in Full | 35 |
| D. | | STATEMENT CONCERNING INCOME TAX CONSEQUENCES. | 35 |
| E. | | ALTERNATIVES TO PLAN. | 36 |
| F. | | CONCLUSION. | 37 |

#12624273 v6

## SECTION I -- INTRODUCTION

TopSpin Medical, Inc. has commenced voluntary bankruptcy proceedings under Chapter 11 of Title 11 of the United States Code. It is circulating this Disclosure Statement to describe its bankruptcy process and to solicit support from creditors and other interest holders as required by the Bankruptcy Code.

### A.    Definitions and Interpretation

Capitalized terms used but not otherwise defined in this Disclosure Statement shall have the respective meanings ascribed to those terms in Article 1 of the Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code which is attached to this Disclosure Statement as Exhibit A (including any exhibits, annexes, schedules, amendments or supplements thereto, the "Plan"). All references in this Disclosure Statement to dollars are to United States dollars.

The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Disclosure Statement as a whole and not to any particular section or clause, except where expressly stated otherwise. A reference to a "Section" refers to a section of this Disclosure Statement, except where expressly stated otherwise. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply in construing this Disclosure Statement. Unless otherwise noted, all references to "Docket No." are to entries on the docket in the Debtor's bankruptcy case (10-[      ] ([      ])).

Where this Disclosure Statement refers to actions by the Debtor, those actions shall be carried out by the Debtor if contemplated to occur before the Effective Date, and by the Reorganized Debtor if contemplated to occur on or after the Effective Date.

### B.    Disclosure Statement

TopSpin Medical, Inc., the above-captioned debtor and debtor in possession, prepared and is transmitting this Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code to holders of Claims against and Equity Interests in the Debtor in connection with the solicitation of votes for the Plan.

On June [      ], 2010, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11, a debtor may reorganize or liquidate its business for the benefit of itself, its creditors and equity interest holders. The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor at the time the chapter 11 petition is filed. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The confirmation and consummation of a plan is the principal objective of a chapter 11 case. The plan sets forth the means for satisfying or discharging claims against and interests in a debtor. A bankruptcy court's confirmation of a plan makes the plan binding upon a debtor, any issuer of securities under the plan, any person acquiring property under the plan, any creditor or equity interest holder, and any other interested party in the chapter 11 case. As described below

in the context of this Chapter 11 Case, there are basically three stages to presenting and confirming a plan.

First, the Debtor will ask the Bankruptcy Court to approve this Disclosure Statement, which describes the Plan, the Debtor's operations, events leading up to the commencement of the Chapter 11 Case, events during the Chapter 11 Case, and the estimated financial consequences resulting from consummating the Plan. However, before the Debtor may solicit acceptances of the Plan, the Bankruptcy Court must approve the Disclosure Statement as containing "adequate information" within the meaning of section 1125 of the Bankruptcy Code, so that those eligible to vote on the Plan can make an informed decision. Second, the Debtor will distribute "solicitation materials" to creditors and Equity Interest holders in those Classes entitled to vote on the Plan (as more fully described in Sections II below), and then tabulate the votes once the voting deadline passes. Third, if at least one Class of Impaired Claims accepts the Plan, the Debtor may ask the Bankruptcy Court to "confirm" (or approve) the Plan.

The Debtor prepared this Disclosure Statement for purposes of soliciting votes to accept the Plan.

**FOR A COMPLETE UNDERSTANDING OF THE PLAN, YOU SHOULD READ THIS DISCLOSURE STATEMENT, THE PLAN, AND ANY EXHIBITS AND SCHEDULES ANNEXED THERETO IN THEIR ENTIRETY.**

**THE DEBTOR RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN.**

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN SOLELY FOR PURPOSES OF SOLICITING VOTES WITH RESPECT TO THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. UNLESS APPROVED BY THE BANKRUPTCY COURT, NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ALL CREDITORS AND INTEREST HOLDERS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(B) AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED JUDGMENT UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

-2-

PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING SECURITIES OF OR CLAIMS AGAINST THE DEBTOR IN THE CHAPTER 11 CASE SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED. THE DEBTOR DOES NOT GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTOR.

FOR A DESCRIPTION OF THE PLAN, RISKS AND OTHER FACTORS PERTAINING TO THE PLAN AS IT RELATES TO CLAIMS AGAINST AND INTERESTS IN THE DEBTOR, PLEASE SEE SECTIONS IV & V OF THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF PROVISIONS OF THE PLAN, DOCUMENTS RELATED TO THE PLAN, EVENTS IN THE CHAPTER 11 CASE, FINANCIAL INFORMATION OF, AND CLAIMS AGAINST, THE DEBTOR. ALTHOUGH THE DEBTOR BELIEVES THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THEY ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT INCLUDE THE ENTIRE TEXT OF THE RELEVANT DOCUMENTS. FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR'S MANAGEMENT BASED ON THE DEBTOR'S BOOKS AND RECORDS, EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN, INCLUDING THE FINANCIAL INFORMATION, IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

WHILE THIS DISCLOSURE STATEMENT DESCRIBES CERTAIN BACKGROUND MATTERS AND THE MATERIAL TERMS OF THE PLAN, IT IS INTENDED AS A SUMMARY DOCUMENT ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ATTACHED TO THE PLAN AND THIS DISCLOSURE STATEMENT. SIMILARLY, DESCRIPTIONS IN THIS DISCLOSURE STATEMENT OF PROCEEDINGS, PLEADINGS, ORDERS, AND OTHER COURT FILINGS IN THIS CHAPTER 11 CASE ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE RELEVANT DOCKET ITEMS. YOU SHOULD READ THE PLAN AND THE EXHIBITS TO OBTAIN A FULL UNDERSTANDING OF THEIR PROVISIONS. ADDITIONAL COPIES OF THIS DISCLOSURE STATEMENT, AS WELL AS ANY DOCKET ITEMS FROM THIS FROM THIS CHAPTER 11 CASE, ARE AVAILABLE FOR INSPECTION DURING REGULAR BUSINESS HOURS AT THE OFFICE OF THE CLERK OF THE BANKRUPTCY COURT, 3RD FLOOR, 824 MARKET STREET, WILMINGTON,

-3-

DELAWARE 19801. IN ADDITION, COPIES MAY BE OBTAINED FOR A CHARGE THROUGH DELAWARE DOCUMENT RETRIEVAL, 230 NORTH MARKET STREET, P.O. BOX 27, WILMINGTON, DELAWARE 19801, (302) 658-9971, OR VIEWED ON THE INTERNET FOR A FEE AT THE BANKRUPTCY COURT'S WEBSITE, HTTP://WWW.DEB.USCOURTS.GOV, BY FOLLOWING THE DIRECTIONS FOR ACCESSING THE ECF SYSTEM ON THAT WEBSITE.

FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND INTERESTS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN, BUT THE PLAN ITSELF QUALIFIES ALL SUMMARIES. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING.

## C. Notice to Holders of Claims and Interests

THE DEBTOR IS TRANSMITTING THIS DISCLOSURE STATEMENT TO HOLDERS OF IMPAIRED CLAIMS AND EQUITY INTERESTS THAT ARE ENTITLED TO VOTE ON THE PLAN UNDER THE BANKRUPTCY CODE, AND TO OTHER PARTIES IN INTEREST. THE PURPOSE OF THIS DISCLOSURE STATEMENT IS TO PROVIDE ADEQUATE INFORMATION TO ENABLE THOSE HOLDERS TO MAKE REASONABLY INFORMED DECISIONS WITH RESPECT TO THE PLAN BEFORE EXERCISING THEIR RIGHTS TO VOTE TO ACCEPT OR REJECT THE PLAN.

ON [                    ], THE BANKRUPTCY COURT ENTERED AN ORDER APPROVING THIS DISCLOSURE STATEMENT AS CONTAINING INFORMATION OF A KIND AND IN SUFFICIENT AND ADEQUATE DETAIL TO ENABLE SUCH HOLDERS TO MAKE AN INFORMED JUDGMENT WITH RESPECT TO ACCEPTANCE OR REJECTION OF THE PLAN (THE "SOLICITATION PROCEDURES ORDER"). THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE EITHER A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN OR AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT.

ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN CAREFULLY AND IN THEIR ENTIRETIES BEFORE DECIDING TO VOTE TO ACCEPT OR REJECT THE PLAN. THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION ABOUT THE PLAN, CONSIDERATIONS PERTINENT TO ACCEPTANCE OR REJECTION OF THE PLAN, AND DEVELOPMENTS CONCERNING THE CHAPTER 11 CASE.

THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT AUTHORIZED BY THE BANKRUPTCY COURT TO SOLICIT VOTES ON THE PLAN. NO SOLICITATION OF VOTES MAY BE MADE EXCEPT AFTER DISTRIBUTION OF THIS DISCLOSURE STATEMENT, AND NO PERSON HAS BEEN AUTHORIZED TO DISTRIBUTE ANY INFORMATION CONCERNING THE DEBTOR OTHER THAN THE INFORMATION CONTAINED HEREIN.

-4-

CERTAIN INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD LOOKING AND CONTAINS ESTIMATES, ASSUMPTIONS, AND PROJECTIONS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL FUTURE RESULTS. SPECIFICALLY, AND WITHOUT DEROGATING FROM THE GENERALITY OF THE FOREGOING, PROJECTED RECOVERIES FOR CREDITORS AND THE BASIS FOR THOSE RECOVERIES, INCLUDING THE EXPECTED VALUE OF ESTATE ASSETS, ARE ESTIMATES, SUBJECT TO CHANGE, AND ARE BY NO MEANS INTENDED TO BE GUARANTIES OR PROMISES IN ANY RESPECT. EXCEPT AS OTHERWISE SPECIFICALLY AND EXPRESSLY STATED HEREIN, THIS DISCLOSURE STATEMENT DOES NOT REFLECT ANY EVENTS THAT MAY OCCUR SUBSEQUENT TO THE DATE HEREOF AND THAT MAY HAVE A MATERIAL IMPACT ON THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTOR DOES NOT INTEND TO UPDATE THIS DISCLOSURE STATEMENT; THUS, THIS DISCLOSURE STATEMENT WILL NOT REFLECT THE IMPACT OF ANY SUBSEQUENT EVENTS NOT ALREADY ACCOUNTED FOR HEREIN. FURTHER, THE DEBTOR DOES NOT ANTICIPATE THAT ANY AMENDMENTS OR SUPPLEMENTS TO THIS DISCLOSURE STATEMENT WILL BE DISTRIBUTED TO REFLECT SUCH EVENTS. ACCORDINGLY, THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCE IMPLY THAT THE INFORMATION HEREIN IS CORRECT OR COMPLETE AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF.

## D. Overview of the Plan

### 1. Classification and Treatment of Claims

The Plan places Claims and Interests into Classes. These Classes take into account the differing nature of the underlying liability for the Claims and Interests and the relative priority of Claims under the Bankruptcy Code.

The following table (the "Plan Summary Table") summarizes the classification and treatment of Claims and Equity Interests under the Plan (including unclassified Claims), as well as the Debtor's high estimate of the percentage recovery, if any, for holders of Equity Interests and Allowed Claims. **THE PLAN SUMMARY TABLE IS INTENDED FOR ILLUSTRATIVE PURPOSES ONLY AND DOES NOT ADDRESS ALL ISSUES REGARDING CLASSIFICATION, TREATMENT, AND ULTIMATE RECOVERIES. THE PLAN SUMMARY TABLE IS NOT A SUBSTITUTE FOR A FULL REVIEW OF THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY.**

The percentage recovery for each Class in the Plan Summary Table is based on the Debtor's good-faith high estimate, based on its current knowledge, of (i) the amount of Claims against Debtor that will ultimately be Allowed,[1] and (ii) the amount of Cash that will be available for

---

[1] Estimated amounts of Allowed Claims do not constitute an admission by the Debtor or any other party as to the validity or amount of any particular Claim. The Debtor reserves the right to dispute the validity or amount of any Claim that has not already been allowed by Final Order of the Bankruptcy Court or by agreement of the parties.

distribution to holders of Allowed Claims. The actual amounts of Allowed Claims against Debtor and Cash available for distribution to creditors could vary materially from the Debtor's estimates, and the actual percentage recoveries for creditors will necessarily depend upon the actual amounts of Allowed Claims, and expenses of the Estates. Further, notwithstanding anything to the contrary in the Disclosure Statement, Plan, or in any documents or filings related hereto, all provisions hereof are expressly made subject to Debtor's rights of setoff and recoupment, including without limitation the right to setoff or recoup claims in favor of Debtor as against a holder of an Allowed Claim against the distribution to which such holder might be entitled on account of its Allowed Claim under the Plan.

For the foregoing reasons, the Debtor cannot represent (and is not representing) that it will distribute the percentage recoveries set forth in the Plan Summary Table or otherwise to holders of Allowed Claims. **THERE IS NO GUARANTEED RECOVERY AND THERE ARE NO GUARANTEED AMOUNTS OF RECOVERY FOR ANY HOLDER OF A CLAIM OR EQUITY INTEREST. ALL ESTIMATES CONTAINED HEREIN ARE SUBJECT TO RISKS AND ASSUMPTIONS, INCLUDING THOSE DISCUSSED IN SECTION VI. MOREOVER, THESE ESTIMATES ARE SUBJECT TO MATERIAL REVISION. THEY SHOULD NOT BE CONSIDERED A REPRESENTATION OF ACTUAL DISTRIBUTIONS TO CREDITORS.**

**THE TREATMENT AND DISTRIBUTIONS, IF ANY, PROVIDED TO HOLDERS OF EQUITY INTERESTS AND ALLOWED CLAIMS PURSUANT TO THE PLAN WILL BE IN FULL AND COMPLETE SATISFACTION OF ALL LEGAL, EQUITABLE, AND CONTRACTUAL RIGHTS REPRESENTED BY THOSE EQUITY INTERESTS AND ALLOWED CLAIMS.**

In the Liquidation Analysis, the estimated distribution percentages to Holders of Allowed General Unsecured Claims do not include the proceeds from Causes of Action because their value, if any, is unknown and unpredictable. In any event, the expected distributions to Holders of Allowed Claims are based on the Liquidation Analysis attached to this Disclosure Statement as Exhibit B and discussed in detail in Section V(E)(1).

| Summary of Classification and Treatment of Claims and Interests | | | |
| --- | --- | --- | --- |
| **CLASS** | **DESCRIPTION** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **ESTIMATED % RECOVERY** |
| n/a | Administrative Expense Claims | Paid in full in Cash equal to the respective Allowed amounts of the Administrative Expense Claims, without payment of interest. Debtor presently estimates Allowed Administrative Expense Claims, including Allowed Claims entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code, to total | 100% |

#12624273 v6

| | | $10,000.00. | |
|---|---|---|---|
| n/a | Professional Compensation and Reimbursement Claims | Paid in full in Cash equal to the respective Allowed amounts of the Professional Compensation and Reimbursement Claims, without payment of interest. Debtor presently estimates Allowed Professional Compensation and Reimbursement Claims (that have not already been paid) to total $25,000.00. | 100% |
| n/a | Priority Tax Claims | Paid in full in Cash equal to the respective Allowed amounts of the Priority Tax Claims, without payment of interest; provided, however, that if Debtors elect, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, to make annual payments of Cash to Holders of Allowed Priority Tax Claims over a period of time after the Effective Date, Allowed Priority Tax Claims will receive interest at the applicable rate under non-bankruptcy law. Debtor presently estimates Allowed Priority Tax Claims to total $0.00. | 100% |
| 1 | Other Priority Claims | Paid in full in Cash equal to the respective Allowed amounts of the Other Priority Claims, without payment of interest. Debtor presently estimates Allowed Other Priority Claims to total $0.00. | 100% |
| 2 | General Unsecured Claims | Reinstated pursuant to section 1124(2) of the Bankruptcy Code. Debtor presently estimates Allowed General Unsecured Claims to total approximately $132,000.00 | 100% |

#12624273 v6

| 3 | Medgenesis Claim | Distribution of 3,493,679 shares of Reorganized Common Stock, representing 69.64% of the authorized and issued Reorganized Common Stock of the Reorganized Debtor subsequent to the Reverse Stock Split. Debtor presently estimates the Allowed Medgenesis Claim to total $353,804.00 | Not applicable, as the debt obligation represented by the Medgenesis Claim is converted to equity, representing a 69.64% ownership stake in Debtor. |
| 4 | Equity Interests | Distribution of one share of Reorganized Common Stock for each share of Common Stock held on the Effective Date. Distribution of one Reorganized Warrant for each Warrant held on the Effective Date. | 100% |

**The foregoing is only a brief summary of certain provisions of the Plan. You should read the full text of the Plan and the more detailed information and financial statements contained elsewhere in this Solicitation and Disclosure Statement.**

## SECTION II -- PLAN VOTING INSTRUCTIONS AND PROCEDURES

### A.    Impairment and Eligibility to Vote

The Plan divides Claims and Equity Interests into different Classes and treats each Class according to sections 503, 507, 1122, 1123 and 1129 of the Bankruptcy Code. As set forth in section 1123(a)(4) of the Bankruptcy Code, the Plan provides for the same treatment of all Claims and Interests within a particular Class.

The level of "impairment" determines whether or not a Holder of a Claim or Interest is entitled to vote on the Plan. "Impairment" is discussed in section 1124 of the Bankruptcy Code. Generally, and qualified by the language of section 1124 of the Bankruptcy Code in all respects, under Section 1124 of the Bankruptcy Code, a Class of Claims or Interests is deemed to be "impaired" if the Plan changes a claimant's legal, equitable or contractual rights, or does not cure all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and does not reinstate the maturity of such Claim or Interest as it existed before the default.

In general, a holder of a claim or interest may vote to accept or to reject a plan if (1) the claim or interest is "allowed," which means generally that no party in interest has objected to such claim or interest, and (2) the claim or interest is impaired by the plan. If the holder of an impaired

#12624273 v6

claim or interest will not receive a distribution under the plan in respect of its claim or interest, the Bankruptcy Code provides that the holder of the claim or interest is deemed to reject the plan and that holder's vote does not need to be solicited. Claims can be deemed "allowed" for voting purposes only, without affecting the rights of the debtor or any other party in interest to object to the claim on substantive grounds.

More specifically, the holder of an "impaired" claim against a debtor is entitled to vote to accept or reject the plan if (1) the plan provides a distribution in respect of such claim, and (2)(a) the claim has been scheduled by the debtors (and such claim is not scheduled as disputed, contingent, or unliquidated), or (b) the holder has filed a proof of claim (and such claim is not contingent) on or before the bar date applicable to such holder, pursuant to sections 502(a) and 1126(a) of the Bankruptcy Code and Bankruptcy Rules 3003 and 3018. Any claim (a) for which a proof of claim has been filed and is identified as a contingent claim, or (b) as to which an objection has been timely filed and has not been withdrawn or dismissed, is not entitled to vote unless the Bankruptcy Court, pursuant to an application under Bankruptcy Rule 3018(a) from the holder of the claim, temporarily allows the claim in an amount that the Bankruptcy Court deems proper for the purpose of accepting or rejecting a plan.

A vote may be disregarded if the Bankruptcy Court determines, pursuant to Section 1126(e) of the Bankruptcy Code, that it was not solicited or procured in good faith or not in accordance with the provisions of the Bankruptcy Code.

The Debtor proposes to establish [          ], 2010 as the record date for determining Plan voting eligibility. Unless otherwise agreed by the Debtor and approved by the Bankruptcy Court, only those entities holding eligible Claims and/or Equity Interests on that date will receive a Ballot with this Disclosure Statement.

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims, Priority Tax Claims or Professional Compensation and Reimbursement Claims for Plan voting purposes, or for purposes of receiving distributions under the Plan. Rather, all Administrative Claims, Priority Tax Claims and Professional Compensation and Reimbursement Claims will be "unclassified" and will be paid in full.

Under the Plan, Holders of Claims in the Classes listed in the following tables are not Impaired, are conclusively presumed to accept the Plan, and shall not receive a Ballot.

| Class | Description |
|-------|-------------|
| Class 1 | Other Priority Claims |
| Class 2 | General Unsecured Claims |

If and to the extent that any Class identified as not Impaired in the foregoing tables is determined to be Impaired, then that Class will be entitled to vote to accept or reject the Plan.

#12624273 v6

Under the Plan, Holders of Claims and Equity Interests in Classes listed in the following tables are entitled to vote to accept or reject the Plan and will receive a Ballot.

| Class | Description |
|---|---|
| Class 3 | Medgenesis Claim |
| Class 4 | Equity Interests |

**CREDITORS WHOSE CLAIMS ARE SUBJECT TO A PENDING OBJECTION ARE NOT ELIGIBLE TO VOTE UNLESS SUCH OBJECTIONS ARE RESOLVED IN THEIR FAVOR OR, AFTER NOTICE AND A HEARING PURSUANT TO BANKRUPTCY RULE 3018(A), THE BANKRUPTCY COURT ALLOWS THE CLAIM TEMPORARILY OR ESTIMATES THE AMOUNT OF THE CLAIM FOR THE SOLE PURPOSE OF VOTING TO ACCEPT OR REJECT THE PLAN. ANY CREDITOR THAT WANTS ITS CLAIM TO BE ALLOWED TEMPORARILY OR ESTIMATED FOR THE SOLE PURPOSE OF VOTING MUST TAKE THE STEPS NECESSARY TO ARRANGE AN APPROPRIATE HEARING WITH THE BANKRUPTCY COURT UNDER BANKRUPTCY RULE 3018(A).**

## B. Solicitation Package

On [         ], the Bankruptcy Court entered the Solicitation Procedures Order, which, among other things, approved this Disclosure Statement and established the procedures for soliciting votes to accept or reject the Plan. Pursuant to the Solicitation Procedures Order, in addition to this Disclosure Statement, the solicitation materials will include copies of: (1) the Plan; (2) a notice establishing the date, time, and place of the Confirmation Hearing, and the time for filing objections to confirmation of the Plan, among other things; (3) the Solicitation Procedures Order; and (4) one or more Ballots (and return envelopes), provided you are the Holder of a Claim or Equity Interest entitled to vote on the Plan.

## C. Voting Procedures, Ballots, and Voting Deadline

If you are a Holder of a Claim or Equity Interest entitled to vote on the Plan and a Ballot is included with this Disclosure Statement, after carefully reviewing the Plan, this Disclosure Statement and the detailed instructions accompanying your Ballot, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the enclosed Ballot. Please complete and sign your original Ballot and return it in the envelope provided. Copies and facsimiles will not be accepted. Each Ballot has been coded to reflect the appropriate Class. Accordingly, in voting to accept or reject the Plan, you must use only the original coded Ballot or Ballots sent to you with this Disclosure Statement.

If you are the Holder of a Claim or Equity Interest entitled to vote on the Plan and you have any questions about (a) the procedure for voting your Claim or Equity Interest with respect to the packet of materials that you have received, or (b) the amount of your Claim or Equity Interest,

-10-

please contact Pepper Hamilton LLP ("Pepper Hamilton") at the following address and phone number:

> Pepper Hamilton LLP
> Hercules Plaza, Suite 5100
> 1313 Market Street, P.O. Box 1709
> Wilmington, DE 19801
> Attn: James C. Carignan, Esq.
> Telephone: (302) 777-6500

**FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE PROPERLY COMPLETED AS SET FORTH IN THE VOTING INSTRUCTIONS ON THE BALLOT AND RECEIVED NO LATER THAN [          ], 2010 AT 4:00 P.M. (EST) (THE "VOTING DEADLINE") BY PEPPER HAMILTON AT THE ADDRESS SET FORTH ABOVE.** UNLESS THE BALLOT BEING FURNISHED IS TIMELY SUBMITTED ON OR BEFORE THE VOTING DEADLINE, TOGETHER WITH ANY OTHER DOCUMENTS REQUIRED BY THE BALLOT, THE SOLICITATION PROCEDURES ORDER PROVIDES FOR THE REJECTION OF THE BALLOT AS INVALID AND, THEREFORE, THE BALLOT WILL NOT BE COUNTED AS AN ACCEPTANCE OR REJECTION OF THE PLAN.

If you are a holder of a Claim or Equity Interest entitled to vote on the Plan and did not receive a Ballot, received a damaged Ballot, or lost your Ballot, please contact Pepper Hamilton at the address or phone number set forth above.

You may obtain an additional copy of the Plan, this Disclosure Statement, or any appendices or exhibits to these documents by contacting Pepper Hamilton at the address or phone number set forth above. In addition, copies of the Plan, this Disclosure Statement, any supplements or amendments to the Plan (if and after filed), and all other filings and orders of the Bankruptcy Court, are or will be publicly available for a fee at the Bankruptcy Court's website: http://www.deb.uscourts.gov.

## SECTION III -- BACKGROUND OF THE DEBTOR AND THE CHAPTER 11 CASE

### A.    Present Status of the Chapter 11 Case

On July [          ], 2010, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Also on the Petition Date, the Debtor filed this Disclosure Statement and its Plan.

### B.    Corporate Structure

Debtor was incorporated in 1999 and is currently a public company. Debtor has conducted all business operations through its wholly-owned Israeli subsidiary, TopSpin Medical (Israel) Ltd. ("TopSpin Israel"). Debtor incorporated TopSpin Israel on October 5, 1999 to engage in research and development of MRI technology using miniaturized MRI sensors. Shares of Debtor's Common Stock trade on the Tel Aviv Stock Exchange in NIS, or Israeli currency.

## C.    Former Business Operations of the Debtor

Until Debtor and TopSpin Israel suspended operations in October 2008 due to financial considerations, Debtor was engaged through TopSpin Israel in the design, research, development and manufacture of imaging devices that utilize MRI technology by means of miniature probes. In 1999, Debtor began researching and developing this technology for use in the diagnosis and therapy guidance of heart disease. During 2006, Debtor expanded its miniaturized MRI activities and began development of a prostate imaging product that could potentially be used for diagnosis of and therapy guidance for prostate cancer. This technology is designed to enable healthcare providers to perform local, MRI-based, tissue characterization and imaging of specific regions of a patient's body using a portable probe without the need for an external MRI scanner.

## D.    Capital Structure

The stock in Debtor consists of 846,391,659 shares of Common Stock (including options to purchase 26,856,261 shares of Common Stock and warrants to purchase 58,064,516 shares of Common Stock). There are no preferred shares outstanding. As of the Petition Date, no dividends had been declared or paid by the Debtor in 2010, or ever. As of the Petition Date, the Debtor did not have any secured debt.

On April 29, 2010, Debtor entered into that certain Loan Agreement with Medgenesis Partners Ltd. pursuant to which Medgenesis loaned Debtor $353,804.00 for certain permitted uses as set forth in the Loan Agreement. Of these funds, $100,000 was designated for Debtor's attorney's fees in connection with the Chapter 11 Case and otherwise, approximately $108,697 was disbursed to satisfy certain outstanding payables of the Debtor and the remainder was placed in escrow pending confirmation and implementation of the Plan in the Chapter 11 Case. On June 27, 2010, Medgenesis demanded repayment of the funds in escrow. Notwithstanding such demand, Debtor expects that Medgenesis will support confirmation of the Plan and its treatment there under.

## E.    Events Leading to the Chapter 11 Filings

In April 2008, Debtor adopted significant changes to its business plan following an analysis of its business and financial condition. Pursuant to such plan, Debtor shifted focus and resources to the development of an endorectal probe for the diagnosis of prostate cancer. In October 2008, Debtor paid approximately $3,291,163 as part of a settlement with (former) holders of Debtor's Series A Debentures. In addition, because the grants due Debtor for years 2007 and 2008 from the Office of the Chief Scientist of the Israeli Ministry of Industry, Trade and Labor were not received in the expected timeframe, the Debtor encountered a challenging financial situation. As a result of the substantial outlay of cash in connection with the settlement with the debenture holders and the lack of income from the expected grants, on October 27, 2008 Debtor ceased operations and terminated all of TopSpin Israel's employees. Since this time, Debtor has focused its energies on raising financing and examining potential acquisition of new business lines in Debtor's field. To raise the necessary financing and capital to enable Debtor to pursue these efforts, Debtor entered into the Medgenesis Transaction in April 2010. With the agreement of Medgenesis, Debtor intends to satisfy the Medgenesis Claim by distributing stock in Debtor to

-12-

Medgenesis in an amount, as discussed further below, that will result in Medgenesis obtaining an approximate 69.64% ownership stake in Debtor.

## F.     Pending Business Acquisition

Debtor is currently engaged in negotiations with multiple separate entities toward the acquisition of various business concerns. These negotiations are, respectively, in preliminary stages and as such cannot be detailed herein.

## SECTION IV -- THE PLAN

The following is a summary of principal provisions of the Plan. It is qualified in its entirety by reference to the Plan, which is attached as Exhibit A to this Disclosure Statement. The statements contained in this Disclosure Statement do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein, and reference is made to the Plan and to those documents for the full and complete statements of their terms and provisions. In the event of any discrepancy between this Disclosure Statement, including the following summary description, and any provision of the Plan, the Plan will control.

## A.     Classification of Claims and Interests

### 1.     Summary

As required by the Bankruptcy Code, the Plan places Claims and Interests into Classes according to their priority and other considerations. Article 2 of the Plan addresses non-classified claims that are to be paid in full. Article 3 of the Plan identifies the Classes of Claims and Interests and the treatment of Claims and Interests in the respective Classes. The categories of Claims and Interests listed below classify Claims (except for Administrative Claims, Priority Tax Claims and Professional Compensation and Reimbursement Claims) and Interests for all purposes, including voting, confirmation and distribution pursuant to the Plan.

### 2.     Classification

The Claims against the Debtor shall be classified as specified below (other than Administrative Claims, Professional Compensation and Reimbursement Claims and Priority Tax Claims, which shall be treated in accordance with Article 2 of the Plan). Consistent with section 1122 of the Bankruptcy Code, the Plan places a Claim or Equity Interest in a particular Class only to the extent the Claim or Interest is within the description of the Class, and the Plan places a Claim or Interest in a different Class to the extent it is within the description of that different Class.

| Summary of Classification and Treatment of Claims and Interests | | | |
|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **ESTIMATED % RECOVERY** |
| n/a | Administrative Expense | Paid in full in Cash equal to the respective Allowed amounts of the | 100% |

| | Claims | Administrative Expense Claims, without payment of interest. Debtor presently estimates Allowed Administrative Expense Claims, including Allowed Claims entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code, to total $10,000.00. | |
|---|---|---|---|
| n/a | Professional Compensation and Reimbursement Claims | Paid in full in Cash equal to the respective Allowed amounts of the Professional Compensation and Reimbursement Claims, without payment of interest. Debtor presently estimates Allowed Professional Compensation and Reimbursement Claims (that have not already been paid) to total $25,000.00. | 100% |
| n/a | Priority Tax Claims | Paid in full in Cash equal to the respective Allowed amounts of the Priority Tax Claims, without payment of interest; provided, however, that if Debtors elect, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, to make annual payments of Cash to Holders of Allowed Priority Tax Claims over a period of time after the Effective Date, Allowed Priority Tax Claims will receive interest at the applicable rate under non-bankruptcy law. Debtor presently estimates Allowed Priority Tax Claims to total $0.00. | 100% |
| 1 | Other Priority Claims | Paid in full in Cash equal to the respective Allowed amounts of the Other Priority Claims, without payment of interest. Debtor presently estimates Allowed Other Priority Claims to total $0.00. | 100% |
| 2 | General Unsecured Claims | Reinstated pursuant to section 1124(2) of the Bankruptcy Code. | 100% |

-14-

| | | Debtor presently estimates Allowed General Unsecured Claims to total $132,000.00. | |
|---|---|---|---|
| 3 | Medgenesis Claim | Distribution of 3,493,679 shares of Reorganized Common Stock subsequent to the Reverse Stock Split, representing 69.64% of the authorized and issued Reorganized Common Stock of the Reorganized Debtor. Debtor presently estimates the Allowed Medgenesis Claim to total $353,804.00 | Not applicable, as the debt obligation represented by the Medgenesis Claim will be converted to equity under the Plan, resulting in a 69.64% ownership stake in the Debtor. |
| 4 | Equity Interests | Distribution of one share of Reorganized Common Stock for each share of Common Stock held on the Effective Date. Distribution of one Reorganized Warrant for each Warrant held on the Effective Date. | 100% |

## B. Treatment of Administrative Claims, Professional Compensation and Reimbursement Claims and Priority Tax Claims

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, claims by Professionals for payment of compensation and reimbursement of expenses and Priority Tax Claims shall not be classified for the purposes of voting or receiving distributions under the Plan. Rather, these Claims shall be treated separately as unclassified Claims by the terms set forth in the Plan.

### 1. Administrative Claims

Each Holder of an Allowed Administrative Claim shall receive, in full satisfaction and discharge thereof, Cash equal to the unpaid amount of such Allowed Administrative Claim (except to the extent that such Holder agrees to less favorable treatment thereof) either on, or as soon as practicable after, the latest of (a) the Effective Date, (b) the date on which such Administrative Claim becomes Allowed, (c) the date on which such Administrative Claim becomes due and payable and (d) such other date as mutually may be agreed to by such Holder and the Debtor. Notwithstanding the foregoing, any Allowed Administrative Claim based on a liability incurred by Debtor in the ordinary course of business during the Chapter 11 Case may be paid in the

ordinary course of business in accordance with the terms and conditions of any agreement relating thereto.

## 2. Priority Tax Claims.

Each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction and discharge thereof, Cash equal to the unpaid amount of such Allowed Priority Tax Claim (except to the extent that such Holder agrees to less favorable treatment thereof) either on, or as soon as practicable after, the latest of (a) the Effective Date, (b) the date on which such Priority Tax Claim becomes Allowed, (c) the date on which such Priority Tax Claim becomes due and payable and (d) such other date as mutually may be agreed to by and among such Holder and the Debtor; *provided, however*, that the Debtor shall be authorized, at its option, and in lieu of payment in full of an Allowed Priority Tax Claim, to make deferred Cash payments on account thereof in the manner and to the extent permitted under section 1129(a)(9)(C) of the Bankruptcy Code.

## 3. Professional Fees.

Each Professional requesting compensation pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code for services rendered in connection with the Chapter 11 Case prior to the Confirmation Date shall File an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Case on or before the sixtieth (60th) day following the Effective Date. Without limiting the foregoing, any Debtor or Reorganized Debtor, as the case may be, may pay the charges incurred by the Debtor on and after the Confirmation Date for any Professional's fees, disbursements, expenses or related support services without application to or approval by the Bankruptcy Court.

## C. Treatment of Classified Claims and Interests

### 1. Other Priority Claims (Class 1)

Class 1 is not impaired and consists of all Claims, other than claims for Professional Fees, Administrative Claims and Priority Tax Claims, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, but only to the extent entitled to such priority. Except to the extent that a holder of an Allowed Other Priority Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Other Priority Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim on the later of the Effective Date, the date such Other Priority Claim becomes an Allowed Other Priority Claim, or such other date as mutually may be agreed to by and among such Holder and Debtor.

### 2. General Unsecured Claims (Class 2)

Class 2 is not impaired and consists of all Allowed General Unsecured Claims. Each Holder of an Allowed General Unsecured Claim shall have such Claim reinstated pursuant to section 1124(2) of the Bankruptcy Code such that such Claim is rendered Unimpaired, except to the extent that such Holder agrees or is deemed to agree to less favorable treatment. The failure of the Debtor or any other party in interest to File an objection, prior to the Effective Date, with

respect to any General Unsecured Claim that is reinstated by the Plan shall be without prejudice to the rights of the Reorganized Debtor or any other party in interest to contest or otherwise defend against such Claim in an appropriate forum (including the Bankruptcy Court, if applicable, in accordance with Article X of the Plan) when and if such Claim is sought to be enforced. Any cure amount that the Debtor may be required to pay pursuant to section 1124(2) of the Bankruptcy Code on account of any such reinstated General Unsecured Claim shall be paid on, or as soon as practicable after, the latest of (x) the Effective Date, (y) the date on which such Claim becomes due and payable in the ordinary course, or (z) the date on which such Claim becomes Allowed.

### 3. Medgenesis Claims (Class 3)

Class 3 is Impaired and consists of the Allowed Medgenesis Claim. Medgenesis shall receive, in full satisfaction and discharge of the Medgenesis Claim, on, or as soon as is practicable after, the Effective Date, 3,493,679 shares of Reorganized Common Stock, which collectively will represent 69.64% of the authorized and issued Reorganized Common Stock of the Reorganized Debtor as of the Effective Date and subsequent to the Reverse Stock Split.

### 4. Equity Interests (Class 4)

Class 4 is Impaired and consists of all Equity Interests in Debtor. On the Effective Date, the Equity Interests shall remain effective and outstanding and be owned and held by the same applicable Person(s) that held and/or owned such Equity Interests immediately prior to the Effective Date. On the Effective Date, the Common Stock then owned by the respective holders of Equity Interests shall be considered Reorganized Common Stock, and each Equity Interest holder shall own the same number of shares of Reorganized Common Stock on the Effective Date as the number of shares of Common Stock such Equity Interest holder held immediately prior to the Effective Date. Likewise, on the Effective Date, any Warrants then owned by the respective holders of Equity Interests shall be considered Reorganized Warrants. All rights, claims and benefits under the Reorganized Warrants shall be identical to such rights, claims and benefits under the Warrants, except that all of such rights, claims and benefits shall pertain to Reorganized Common Stock rather than to Common Stock.

As a result of the Reorganized Certificate of Incorporation and the distribution of Reorganized Common Stock as set forth in the Plan, as of the Effective Date (a) Holders of Equity Interests will own, in the aggregate, 30.36% of authorized and outstanding Reorganized Common Stock in the Reorganized Debtor and (b) Medgenesis will own shares equaling approximately 69.64% of authorized and outstanding Reorganized Common Stock in the Reorganized Debtor.

## D. Acceptance or Rejection of The Plan

### 1. Classes of Impaired Claims Entitled to Vote

The following Classes are Impaired and shall be entitled to vote to accept or reject the Plan:

| Class | Description |
|-------|-------------|
|       |             |

| Class | Description |
|-------|-------------|
| Class 3 | Medgenesis Claims |
| Class 4 | Equity Interests |

## 2. Classes Deemed to Accept the Plan

The following Classes are not Impaired and shall be deemed to accept the Plan:

| Class | Description |
|-------|-------------|
| Class 1 | Other Priority Claims |
| Class 2 | General Unsecured Claims |

Pursuant to sections 1126(f) of the Bankruptcy Code, Classes 1 and 2 are conclusively presumed to accept the Plan, and the Debtor will not solicit votes of Holders of Claims in Classes 1 and 2. If and to the extent any Class identified as not being Impaired is actually Impaired (whether as a result of the terms of the Plan or any modification or amendment thereto) that Class shall be entitled to vote to accept or reject the Plan.

## 3. Nonconsensual Confirmation

As set forth in Section 3.3 of the Plan, if one or more Classes of Impaired Claims does not accept the Plan, the Debtors intend to ask the Bankruptcy Court to confirm the Plan as a cramdown plan pursuant to section 1129(b) of the Bankruptcy Code with respect to each such Class.

## E. Means of Implementation of Plan

### 1. Compromise of Controversies.

Pursuant to Section 4.1 of the Plan, in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of the Confirmation Order will constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

### 2. Vesting of Assets.

Pursuant to Section 4.2 of the Plan, except as otherwise provided in the Plan or in any Plan Document, on the Effective Date, title to all Assets of Debtor will vest in the Reorganized Debtor, free and clear of all Claims, liens, encumbrances and other interests.

### 3. Continued Corporate Existence.

Pursuant to Section 4.3 of the Plan, and except as otherwise provided in the Plan, Debtor, as Reorganized Debtor, will continue to exist on and after the Effective Date as a separate legal entity with all of the powers available to such legal entity under applicable law and pursuant to the applicable Reorganized Constituent Documents, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law. On and after the occurrence of the Effective Date, the Reorganized Debtor will be authorized to operate their respective businesses, and to use, acquire or dispose of Assets without supervision or approval by the Bankruptcy Court, free from any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

### 4. Reorganized Constituent Documents.

Pursuant to Section 4.4 of the Plan, on, or as soon as practicable after, the Effective Date, the Reorganized Debtor will be authorized, but not required, (a) to make any and all filings that may be required in connection with the Reorganized Constituent Documents with the appropriate governmental offices and/or agencies and (b) take any and all other actions that may be required to render the Reorganized Constituent Documents effective; provided, however, that notwithstanding anything to the contrary in this Plan, all matters concerning the corporate structure of the Debtor shall conclusively be deemed to have occurred and become effective on the Effective Date, pursuant to Section 4.7 of the Plan.

One effect of the occurrence of the Effective Date will be the adoption of the Reorganized Certificate of Incorporation, which shall become effective and deemed authorized and approved in all respects notwithstanding any requirements under any applicable non-bankruptcy law. As a result of the Reorganized Certificate of Incorporation and the Reverse Stock Split, the number of authorized shares of the Debtor will be 50 million, which shares shall be represented by Reorganized Common Stock. As set forth in sections 3.2(c) and 3.2(d) of the Plan, on or about the Effective Date the Debtor will issue Reorganized Common Stock to Medgenesis, which shares will represent 69.64% of all authorized and outstanding Reorganized Common Stock.

### 5. Officers and Directors.

Pursuant to Sections 4.5 and 4.6 of the Plan and section 1129(a)(5) of the Bankruptcy Code, present board members Eran Feldhay, Ran Ben-Or, Hanan Waksman, Orly Ben Ami and Zvi Linkovski will serve on the board of directors of the Reorganized Debtor. Any subsequent Reorganized Board of Directors shall be elected, classified and composed in a manner consistent with the Reorganized Constituent Documents and applicable non-bankruptcy law. Shiri Blackman, the present Controller and Corporate Secretary of the Debtor, will continue to serve in such capacity for the Reorganized Debtor.

### 6. Corporate Action.

Pursuant to Section 4.7 of the Plan, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan conclusively shall be deemed authorized and approved in all respects, including (a) the adoption of the Reorganized Constituent Documents, (b) the selection of the directors and officers for the Reorganized

-19-

Debtor, (c) the issuance of the Reorganized Common Stock, and (d) all other actions contemplated by the Plan (whether to occur before, on or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Holders of Equity Interests, directors or officers of the Debtor or the Reorganized Debtor. Upon the Effective Date, the appropriate officers of the Reorganized Debtor and members of the board of directors of the Reorganized Debtor shall be authorized and directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor. The authorizations and approvals contemplated in Section 4.7 of the Plan shall be effective notwithstanding any requirements under any applicable non-bankruptcy law. For purposes of clarity and the avoidance of doubt, all outstanding Common Stock shall automatically be considered shares of equal amounts of Reorganized Common Stock, without the necessity of issuing or registering new stock certificates or any similar action.

### 7.     Reverse Stock Split

Pursuant to Section 4.8 of the Plan, upon the Effective Date, Debtor shall be authorized, and shall be deemed to have effected, a reverse split of the Reorganized Common Stock, such that 500 shares of Reorganized Common Stock shall be equal to 1 share of Reorganized Common Stock. Likewise, a warrant or option to purchase 500 shares of Reorganized Common Stock shall, subsequent to the Reverse Stock Split, be a warrant or option, as the case may be, to purchase 1 share of Reorganized Common Stock. The Reverse Stock Split shall not impair or otherwise affect the value of the aggregate Reorganized Common Stock held by each Holder, because 1 share of Reorganized Common Stock immediately subsequent to the Reverse Stock Split shall have the same value as 500 shares of Reorganized Common Stock immediately prior to the Reverse Stock Split. Likewise, the Reverse Stock Split shall not impair or otherwise affect the respective percentages of all Reorganized Common Stock held by each respective Holder, because all Reorganized Common Stock shall be subject to the Reverse Stock Split.

### 8.     Sources of Cash for Plan Distribution.

Pursuant to Section 4.9 of the Plan, and except as otherwise provided in the Plan or Confirmation Order, all Cash required for the payments to be made under the Plan will be obtained from the Debtor's and the Reorganized Debtor's Cash balances.

## F.     Treatment of Executory Contracts and Unexpired Leases

### 1.     Assumption of Executory Contracts and Unexpired Leases.

All executory contracts and unexpired leases of the Debtor that are not (i) rejected by the Debtor prior to the Effective Date, (ii) subject to a motion seeking such rejection as of the Effective Date or (iii) identified in the Plan Supplement as executory contracts or unexpired leases for which the Debtor expressly reserves the right to seek to reject, shall be deemed to have been assumed by the Debtor pursuant to sections 365 and 1123 of the Bankruptcy Code without further notice or

order of the Bankruptcy Court. Each executory contract and unexpired lease assumed pursuant Article V of the Plan shall re-vest in, and be fully enforceable by, the Reorganized Debtor in accordance with the terms thereof, except as otherwise modified by the provisions of the Plan or by any order of the Bankruptcy Court. Any monetary amount by which any executory contract or unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, in accordance with section 365(b)(1) of the Bankruptcy Code, by payment of such amount in Cash, on the Effective Date, or upon such other terms as the parties to such executory contract or unexpired lease may otherwise agree. If a dispute arises regarding (i) the amount of any cure payments required under section 365(b)(1) of the Bankruptcy Code, (ii) the ability of the Reorganized Debtor or any assignee thereof to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (iii) any other matter pertaining to assumption under section 365 of the Bankruptcy Code, the cure payments required under section 365(b)(1) of the Bankruptcy Code, if any, shall be made following the entry of a Final Order resolving such dispute.

2. **Claims Based on Rejection of Executory Contracts or Unexpired Leases.**

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, if any, must be Filed within thirty (30) days after the date of entry of an order of the Bankruptcy Court approving such rejection. Any Claim arising from the rejection of an executory contract or unexpired lease for which proof of such Claim is not Filed within such time period shall forever be barred from assertion against the Debtor or the Reorganized Debtor, the Estate and its property, unless otherwise ordered by the Bankruptcy Court. Any Allowed Claim arising from the rejection of executory contracts or unexpired leases for which proof of such Claim timely has been Filed shall be, and shall be treated as, an Allowed General Unsecured Claim under the terms hereof, subject to any limitation under section 502(b) of the Bankruptcy Code or otherwise.

3. **Indemnification of Directors, Officers and Employees.**

Any obligations or rights of the Debtor or Reorganized Debtor to defend, indemnify, reimburse or limit the liability of Covered Persons pursuant to any applicable certificates of incorporation, by-laws, policy of providing employee indemnification, state law or specific agreement in respect of any claims, demands, suits, causes of action or proceedings against such Covered Persons based upon any act or omission related to such Covered Persons' service with, for or on behalf of the Debtor prior to the Effective Date, shall be treated as if they were executory contracts that are assumed under the Plan and shall survive the Effective Date and remain unaffected hereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement or limitation of liability is owed in connection with an occurrence before or after the Petition Date.

4. **Compensation and Benefit Programs.**

Unless otherwise rejected by the Debtor prior to the Effective Date or subject to a motion seeking such rejection as of the Effective Date, all duly-authorized and validly-existing employment and severance policies and compensation and benefit plans, policies and programs of the Debtor applicable to their employees, retirees and non-employee directors, including all

#12624273 v6

savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans and life, accidental death and dismemberment insurance plans, shall be deemed to be, and treated, as executory contracts and, on the Effective Date, shall be assumed pursuant to sections 365 and 1123 of the Bankruptcy Code.

## G.    Provisions Governing Distributions

### 1.    Date of Distributions

Except as otherwise provided in the Plan, any distribution to be made hereunder shall be made on the later of the Effective Date, or the date on which a Claim becomes an Allowed Claim, or the date on which a Claim becomes payable in the ordinary course, or as soon as practicable thereafter. Any payment or act required to be made or done hereunder on a day that is not a Business Day shall be made or done on the next succeeding Business Day.

### 2.    Disbursing Agent

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Reorganized Debtor as Disbursing Agent or such other entity designated by the Reorganized Debtor as the Disbursing Agent. The Disbursing Agent shall be empowered (i) to effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated by the Plan, (iii) without further order of the Bankruptcy Court, employ or contract with any Entities to assist in or make the distributions required by the Plan and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

### 3.    Delivery of Distributions and Undeliverable or Unclaimed Distributions.

If any distribution or notice provided in connection with the Chapter 11 Case to any Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable or otherwise is unclaimed, the Disbursing Agent shall make no further distribution to such Holder unless and until such Disbursing Agent is notified in writing of such Holder's then current address. On, or as soon as practicable after, the date on which a previously undeliverable or unclaimed distribution becomes deliverable and claimed, the Disbursing Agent shall make such distribution without interest thereon. Any Holder of an Allowed Claim that fails to assert a Claim hereunder for an undeliverable or unclaimed distribution within one year after the Effective Date shall be deemed to have forfeited its Claim for such undeliverable or unclaimed distribution and shall forever be barred and enjoined from asserting such Claim against any of the Debtor, the Estate or the Reorganized Debtor or its property. After the first anniversary of the Effective Date, all property or interests in property not distributed pursuant to this Section shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code and shall revert to the Reorganized Debtor, and the Claim of any other Holder to such property or interests in property shall be discharged and forever barred. Nothing contained herein shall require, or be construed to require, the Disbursing Agent to attempt to locate any Holder of an Allowed Claim. For purposes of clarity and the avoidance of doubt the Common Stock and Warrants owned by holders of Equity Interest shall automatically be converted to Reorganized Common Stock and

Reorganized Warrants as set forth in the Plan, without the need for the issuance or registration of new stock certificates.

### 4. Setoff and Recoupment

The Reorganized Debtor is permitted, but not required, under the Plan to set off against any Claim or the distributions to be made hereunder on account of such Claim, any claims of any nature whatsoever the Debtor has against the Holder of such Claim; *provided, however*, that neither the failure to exercise such setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such claim the Reorganized Debtor may have against such Holder.

### 5. Manner of Payment Under Plan of Reorganization.

The Disbursing Agent shall be authorized, in its discretion, to make any Cash payment required to be made hereunder by check or wire transfer.

### 6. Withholding and Reporting Requirements.

In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

### H. Deadline for filing Proofs of Claim

All proofs of claim, to be considered, must be submitted so as to be actually received no later than the Claims Bar Date by counsel to the Debtor, Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, P.O. Box 1347, Wilmington, Delaware 19899-1347, Attn: James C. Carignan, Esq. **Proofs of claim will be considered filed only if received at this address on or before the Claims Bar Date.** All proofs of claim must: (i) be asserted using Official Form 10 (a blank copy of which can be obtained from counsel to the Debtor); (ii) be originals, signed by the claimant (or, if the claimant is not an individual, then by an authorized agent of the claimant); (iii) be denominated in United States Currency; and (iv) attach any documents upon which the proof of claim is based. The following entities are **not** required to file a proof of claim: (i) any entity which has already filed a proof of claim in a form that complies with the requirements of this section; (ii) any entity whose Claim is listed on the Schedules, whose Claim is **not** listed as "disputed," "contingent," or "unliquidated," and which entity **agrees** with the classification and amount of its claim as set forth in the Schedules; (iii) any holder of a Claim that heretofore has been allowed by an order of the Bankruptcy Court; (iv) any entity whose Claim has been paid in full. ANY HOLDER OF A CLAIM WHO IS REQUIRED, BUT FAILS, TO FILE A PROOF OF SUCH CLAIM IN ACCORDANCE WITH THIS SECTION SHALL BE FOREVER BARRED, ESTOPPED AND ENJOINED FROM ASSERTING SUCH CLAIM THE CHAPTER 11 CASE AGAINST THE DEBTOR OR ITS SUCCESSORS OR PROPERTY AND FROM FILING A PROOF OF CLAIM WITH RESPECT THERETO AND THE DEBTOR, ITS SUCCESSORS AND ITS PROPERTY SHALL, UPON THE EFFECTIVE DATE, BE FOREVER DISCHARGED FROM ANY AND ALL INDEBTEDNESS OR LIABILITY WITH RESPECT TO SUCH CLAIM.

-23-

1. **Prosecution of Objections to Claims.**

On and after the Effective Date, the Reorganized Debtor (a) shall have the authority to file, settle, compromise, withdraw or litigate to judgment objections to Claims and (b) shall be permitted to settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

2. **Estimation of Claims.**

The Debtor (or the Reorganized Debtor, as the case may be) is permitted under the Plan, at any time, to request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor (or the Reorganized Debtor, as the case may be) previously had objected to such Claim or whether the Bankruptcy Court had ruled on such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during any litigation concerning any objection to such Claim, including during the pendency of any appeal relating to such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If such estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor (or the Reorganized Debtor, as the case may be) may elect to pursue any supplemental proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

3. **Payments and Distributions on Disputed Claims.**

Notwithstanding any other provision to the contrary herein or in the Plan, no payments or distributions shall be made hereunder with respect to all or any portion of any Disputed Claim unless and until all objections to such Disputed Claim have been settled, withdrawn or determined by Final Order, and such Disputed Claim has become an Allowed Claim. Moreover, notwithstanding any other provision of the Plan, no interest shall accrue or be Allowed on any Claim during the period after the Petition Date.

## I. CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE

1. **Conditions Precedent to Confirmation.**

The Confirmation Order shall not be entered unless and until such Confirmation Order is in form and substance satisfactory to the Debtor.

2. **Conditions Precedent to the Effective Date.**

The Effective Date shall not occur unless and until each of the following conditions has occurred or has been waived in accordance with the terms herein:

(a)     the Confirmation Order shall have been entered on the docket for the Chapter 11 Case;

-24-

(b)     the Confirmation Order shall have become a Final Order;

(c)     all authorizations, consents and approvals determined by the Debtor to be necessary to implement the terms of the Plan shall have been obtained;

(d)     the fees and expenses payable under Section 2.3 of the Plan requests for which have been submitted to the Debtor, shall have been paid in full;

(e)     all statutory fees and obligations then due and payable to the Office of the United States Trustee shall have been paid and satisfied in full;

(f)     all other actions necessary to implement the terms of the Plan shall have been taken; and

(g)     all requirements, rules and regulations of Israeli law related to the issuance of Reorganized Common Stock and the Reorganized Warrants and related to the Reorganized Constituent Documents shall have been satisfied.

**3.     Waiver of Conditions.**

Any condition set forth in Article VIII of the Plan (other than the conditions set forth in Section 8.2(a) and 8.2(c) of the Plan) may be waived, in whole or in part, at any time by the Debtor, without notice or leave or order of the Bankruptcy Court.

**4.     Modification of Plan.**

The Debtor shall be permitted to amend, supplement or modify the Plan at any time, subject to the restrictions and requirements under section 1127 of the Bankruptcy Code, and except to the extent such amendment, supplement or modification affects a party's right of consent hereunder and such consent has not been previously obtained.

**5.     Effect of Withdrawal or Revocation.**

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date. If the Plan is so revoked or withdrawn, or if the Effective Date fails to occur, then the Plan shall be deemed null and void in its entirety and of no force or effect. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim against or Equity Interest in any Debtor or any other Entity, or to prejudice in any manner any further proceedings involving the Debtor, the rights of Debtor or any other Entity.

**6.     Reservation of Rights.**

The Plan shall have no force or effect unless and until the Confirmation Order is entered. Prior to the Effective Date, none of the Filing of the Plan, any statement or provision contained in the Plan or action taken by the Debtor with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtor or any other party with respect to any Claims or Equity Interests or any other matter.

#12624273 v6

7.    **Substantial Consummation of Plan.**

Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

## J.    EFFECT OF PLAN CONFIRMATION

1.    **Binding Effect.**

The Plan shall be binding upon and inure to the benefit of the Debtor, all current and former Holders of Claims and Equity Interests and their respective successors and assigns, including, but not limited to, the Reorganized Debtor.

2.    **Discharge of Claims.**

Except as otherwise provided in the Plan, upon the Effective Date, all existing Claims and Equity Interests shall be, and shall be deemed to be, discharged and terminated.

3.    **Releases.**

*Releases By the Debtor.*  **Upon the Effective Date, the Debtor and the Reorganized Debtor, in its individual capacity and as debtor in possession, shall be deemed forever to release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtor or Reorganized Debtor to enforce the terms of the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered in connection with the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or before the Effective Date in any way relating to the Debtor, the Reorganized Debtor, the Chapter 11 Case, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtor, the Estate or the Reorganized Debtor against any of the Releasees; *provided, however,* that there shall be no such release, waiver or discharge on account of claims or obligations in respect of (i) any loan, advance or similar payment made by the Debtor or their affiliates to or for the benefit of any Releasee or (ii) any continuing contractual obligation owed by such Releasee to or for the benefit of the Debtor.**

4.    **Exculpation and Limitation of Liability.**

**None of the Debtor, the Reorganized Debtor or the Releasees shall have or incur any liability to, or be subject to any right of action by, any Holder of a Claim or Equity Interest, or any other party in interest in the Chapter 11 Case, or any of their respective agents, employees, representatives, financial advisors, attorneys or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of, the Chapter 11 Case, the negotiation and preparation for the filing of the Chapter 11 Case, the Medgenesis Transaction, the formulation, negotiation or implementation of the Plan, the solicitation of acceptances of**

**the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence, willful misconduct, fraud or criminal conduct as determined by a final order entered by a court of competent jurisdiction. Without limiting the generality of the foregoing, the Debtor, the Reorganized Debtor and the Releasees shall, in all respects, be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan. Nothing in this Section shall limit the liability of the professionals to their respective clients pursuant to the applicable ethical rules.**

5.    **Injunction.**

*General.* **All Entities who have held, hold or may hold Claims or Equity Interests and all other parties in interest in the Chapter 11 Case, along with their respective current and former employees, agents, officers, directors, principals and affiliates, permanently are enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or the Reorganized Debtor, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor or Reorganized Debtor, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or Reorganized Debtor or (iv) asserting (other than in a timely filed proof of claim in the Chapter 11 Case) any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or Reorganized Debtor or against the property or interests in property of the Debtor or Reorganized Debtor, on account of such Claims or Equity Interests; or (v) taking any actions to interfere with the implementation or consummation of the Plan.**

6.    **Term of Bankruptcy Injunction or Stays.**

All injunctions or stays provided for in the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence as of the Confirmation Date, shall remain in full force and effect until the Effective Date.

7.    **Termination of Subordination Rights and Settlement of Related Claims.**

The classification and manner of satisfying all Claims and Equity Interests under the Plan take into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510(b) or 510(c) of the Bankruptcy Code, or otherwise. All subordination rights that a Holder of a Claim or Equity Interest may have with respect to any distribution to be made under the Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be enjoined permanently. Accordingly, distributions under the Plan to Holders of Allowed Claims will not be subject to payment of a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

8.    **Preservation of Rights of Action.**

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and have the exclusive right to enforce, after the Effective Date, any claims, rights and Causes of Action that the Debtor or the Estate may hold against any Entity, including all claims relating to

-27-

transactions under section 549 of the Bankruptcy Code, all transfers recoverable under section 550 of the Bankruptcy Code, all Causes of Action against any Entity on account of indebtedness and any other Causes of Action in favor of the Reorganized Debtor or its Estate. The Reorganized Debtor shall be permitted to pursue such retained claims, rights or Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor.

## SECTION V -- CONFIRMATION OF THE PLAN.

### A.    Introduction

The Bankruptcy Code requires the Bankruptcy Court to determine whether a Chapter 11 plan complies with the technical requirements of chapter 11 of the Bankruptcy Code. It requires further that a plan proponent's disclosures concerning such plan have been adequate and have included information concerning all payments made or promised by the debtor in connection with the plan.

To confirm the Plan, the Bankruptcy Court must find that all of these, and certain other requirements, have been met. Thus, even if the requisite vote is achieved for each Class of impaired Claims, the Bankruptcy Court must make independent findings respecting the Plan's conformity with the requirements of the Bankruptcy Code before it may confirm the Plan. Some of these statutory requirements are discussed below.

### B.    Conditions to Confirmation and Effective Date

The Plan may not be confirmed unless the Disclosure Statement has been approved by the Bankruptcy Court and all other requirements for confirmation under the Bankruptcy Code have been met.

The Effective Date may not occur, and thus the Plan will not become effective, unless: (a) the Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance reasonably satisfactory to the Debtor; (b) no stay of the Confirmation Order shall then be in effect; and (c) there shall exist sufficient Cash to satisfy Administrative Expense Claims, claims of Professionals for payment of compensation and reimbursement of expenses, Priority Tax Claims and Other Priority Claims which are Allowed.

### C.    Voting Procedures and Standards

Holders of Claims that are "impaired" under the Plan but not deemed to reject the Plan by virtue of receiving no distributions thereunder will receive a Ballot with this Disclosure Statement for the acceptance or rejection of the Plan. Only holders of Class 3 (Medgenesis Claim), and Class 4 (Equity Interests) are entitled to vote. Holders of Claims or Equity Interests whose legal, contractual or equitable rights are altered, modified or changed by the proposed treatment under the Plan or whose treatment under the Plan is not provided for in section 1124 of the Bankruptcy Code are considered "impaired."

Instructions on how to complete a Ballot and the deadline for voting on the Plan are contained in the solicitation materials accompanying this Disclosure Statement and the Plan.

-28-

IF A BALLOT IS DAMAGED OR LOST OR IF YOU HAVE ANY QUESTIONS
CONCERNING VOTING PROCEDURES, PLEASE CONTACT:

> TopSpin Medical, Inc.
> Hama'apilim 5
> Kfar Shmaryahu, Israel 46910
> Attn: Shiri Blackman
> Tel: 972-9-9554333
> E-mail: shiri@topspin.co.il

A VOTE MAY BE DISREGARDED IF THE BANKRUPTCY COURT DETERMINES,
AFTER NOTICE AND A HEARING, THAT SUCH ACCEPTANCE OR REJECTION WAS
NOT MADE OR SOLICITED OR PROCURED IN GOOD FAITH OR IN ACCORDANCE
WITH THE PROVISIONS OF THE BANKRUPTCY CODE.

Any impaired Class of Claims that fails to achieve the requisite "accepted" vote will be deemed
to have rejected the Plan.

## D.    Acceptance

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance
by holders of at least two-thirds in dollar amount, and more than one-half in number, of claims of
that class that actually vote. Acceptance of the Plan need only be solicited from holders of
Claims whose Claims are "impaired" and not deemed to have rejected the Plan. Except in the
context of a "cram down" (i.e., confirmation of a plan that has not been accepted by all impaired
classes), as a condition to confirmation of the Plan, the Bankruptcy Code requires that, with
certain exceptions, each Class of impaired Claims accepts the Plan.

The Plan is predicated on Class 3 (Medgenesis Claim) and Class 4 (Equity Interests) voting to
accept the Plan. In the event the requisite votes are not obtained, the Debtor has the right,
assuming that at least one class of impaired Claims has accepted the Plan, to request
confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code. Section 1129(b)
permits confirmation of a plan notwithstanding rejection by one or more classes of impaired
claims or impaired interests if the court finds that the plan does not discriminate unfairly and is
"fair and equitable" with respect to the rejecting class or classes. This procedure is commonly
referred to in bankruptcy parlance as "cramdown."

If either Class 3 (Medgenesis Claim) or Class 4 (Equity Interests) votes to reject the Plan, the
Debtor may seek a cramdown of such Class at the Confirmation Hearing.

## E.    Confirmation and Consummation

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of
section 1129(a) of the Bankruptcy Code have been satisfied with respect to the Plan. Section
1129(a) of the Bankruptcy Code requires that, among other things, for a plan to be confirmed:

- The plan complies with the applicable provisions of the Bankruptcy Code.

- The proponents of the plan have complied with the applicable provisions of the Bankruptcy Code.

- The plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or to be made by the proponents under the plan for services or for costs and expenses in, or in connection with, the chapter 11 case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

- The proponents have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in the plan with the debtor, or a successor to the debtor under the plan. The appointment to, or continuance in, such office of such individual, must be consistent with the interests of creditors and equity security holders and with public policy and the proponents must have disclosed the identity of any insider that the reorganized debtors will employ or retain, and the nature of any compensation for such insider.

- With respect to each class of impaired claims or interests, either each holder of a claim or interest of such class has accepted the plan, or will receive or retain under the plan on account of such claim or interest, property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated on such date under chapter 7 of the Bankruptcy Code.

- Each class of claims or interests has either accepted the plan or is not impaired under the plan.

- Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that allowed administrative expenses and priority claims (other than tax claims) will be paid in full on the effective date and that priority tax claims will receive on account of such claims, either payment in full on the effective date, or deferred cash payments, over a period not exceeding five (5) years after the date of assessment of such claim, of a value, as of the effective date, equal to the allowed amount of such claim.

- If a class of claims is impaired, at least one (1) impaired class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim in such class.

- Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan.

Subject to receiving the requisite votes in accordance with § 1129(a)(8) of the Bankruptcy Code and the "cram down" of Classes not voting to accept the Plan, the Debtor believes that (i) the

Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, (ii) the Debtor has complied, or will have complied, with all of the requirements of Chapter 11, and (iii) the Plan has been proposed in good faith.

Set forth below is a more detailed summary of the relevant statutory confirmation requirements.

## 1. Best Interests of Holders of Claims and Equity Interests

The "best interests of creditors" test requires that the court find either that all members of each impaired class have accepted the plan or that each holder of an allowed claim or interest of each impaired class of claims or interests will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date. The Liquidation Analysis annexed as **Exhibit B** hereto demonstrates that the Debtor has satisfied the "best interests of creditors" test.

To calculate what holders of Claims would receive if the Debtor was hypothetically liquidated under Chapter 7 of the Bankruptcy Code, the Bankruptcy Court must first determine the dollar amount that would be realized from the liquidation (the "Chapter 7 Liquidation Fund") of the Debtor. The Chapter 7 Liquidation Fund would consist of the net proceeds from the disposition of the Debtor's remaining assets augmented by the Cash held by the Debtor and recoveries on Causes of Actions against third parties, if any. The Chapter 7 Liquidation Fund would then be reduced by the costs of the liquidation. The costs of liquidation under Chapter 7 would include the fees and expenses of a trustee, as well as those of counsel and other professionals that might be retained by the trustee, selling expenses, any unpaid expenses incurred by the Debtor during the Chapter 11 Case (such as fees for attorneys and financial advisors) which would be allowed in the Chapter 7 proceedings, and claims incurred by the Debtor during the pendency of the Chapter 11 Case. These claims would be paid in full out of the Chapter 7 Liquidation Fund before the balance of the Chapter 7 Liquidation Fund, if any, would be made available to holders of Claims. In addition, other claims which would arise upon conversion to a Chapter 7 case would dilute the balance of the Chapter 7 Liquidation Fund available to holders of Claims. Moreover, additional claims against the Debtor's estate might arise as the result of the establishment of a new bar date for the filing of claims in the Chapter 7 cases for the Debtor. The present value of the distributions out of the Chapter 7 Liquidation Fund (after deducting the amounts described above) are then compared with the present value of the property offered to each Class of Claims and holders of Equity Interests under the Plan to determine if the Plan is in the best interests of each holder of a Claim.

The Debtor believes that a Chapter 7 liquidation of the Debtor's remaining assets would result in diminution in the value to be realized under the Plan by holders of Claims. That belief is based upon, among other factors: (a) a distribution on account of the Medgenesis Claim from the Chapter 7 Liquidation Fund rather than a distribution of Reorganized Common Stock on account of such claim would result in insufficient Cash available to pay all General Unsecured Claims in full, as is contemplated under the Plan; (b) conversion of the Chapter 11 Case to Chapter 7 could result in the return to Medgenesis of escrowed funds that were paid into escrow in connection with the Medgenesis Transaction, rather than the release of such funds to Debtor; (c) the additional administrative expenses involved in the appointment of a trustee, attorneys,

-31-

accountants, and other Chapter 7 professionals; (d) the substantial time which would elapse before creditors would receive any distribution in respect of their Claims due to a trustee's need to become familiar with the Chapter 11 Cases and the Debtor's books and records, and the trustee's duty to conduct independent investigations; (e) the additional Claims that may be asserted against the Debtor; and (f) the uncertainty of a trustee's ability to retain key personnel of the Debtor to assist in identifying the bases for claims objections and Causes of Action.

## 2.    Financial Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation should not be likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor unless such liquidation or reorganization is proposed in the plan. It is unlikely that confirmation of the Plan will be followed by the liquidation or further reorganization of the Debtor, since the great majority of indebtedness owed by Debtor (represented by the Medgenesis Claim) is converted to equity interests under the Plan with the result that, after the Effective Date, Debtor will enjoy a significant cash surplus that will be more than enough to pay Allowed Administrative Claims, Priority Tax Claims, Other Priority Claims and General Unsecured Claims in full. Accordingly, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

## 3.    Acceptance by Impaired Classes

A class is "impaired" under a plan unless, with respect to each claim or interest in such class, the plan: (i) leaves unaltered the legal, equitable and contractual rights to which the claim or interest entitles the holder of such claim or interest; or (ii) notwithstanding any contractual provision or applicable law which entitles the holder of such claim or interest to demand or receive accelerated payment on account of a default, cures any default, reinstates the original maturity of the obligation, compensates the holder for any damages incurred as a result of reasonable reliance on such provision or law and does not otherwise alter the legal, equitable or contractual rights of such holder based upon such claim or interest. A class that is not impaired under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. See Section V, above, for identification of whether a Class is deemed impaired or unimpaired under the Plan.

## 4.    Cramdown

THE DEBTOR RESERVES THE RIGHT TO CRAM DOWN THE PLAN AGAINST ANY NON-ACCEPTING CLASS(ES) OF HOLDERS OF CLAIMS OR EQUITY INTERESTS.

The Bankruptcy Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted the Plan. The "cramdown" provisions of the Bankruptcy Code are set forth in section 1129(b) of the Bankruptcy Code. Under the cramdown provisions, upon the request of a plan proponent the bankruptcy court will confirm a plan despite the lack of acceptance by an impaired class or classes if the bankruptcy court finds that (i) the plan does not discriminate unfairly with respect to each non-accepting impaired class, (ii) the plan is fair and equitable with respect to each non-accepting impaired class, and (iii) at least one impaired class has accepted the plan. These

standards ensure that holders of junior interests, such as common stockholders, cannot retain any interest in the debtor under a plan that has been rejected by a senior class of impaired claims or interests unless such impaired claims or interests are paid in full.

As used by the Bankruptcy Code, the phrases "discriminate unfairly" and "fair and equitable" have narrow and specific meanings unique to bankruptcy law. A plan does not discriminate unfairly if claims or interests in different classes but with similar priorities and characteristics receive or retain property of similar value under a plan. By establishing separate Classes for the holders of each type of Claim and Equity Interest and by treating each holder of a Claim and Equity Interest in each Class identically, the Debtor believes that it has structured the Plan so as to meet the "unfair discrimination" test of section 1129(b) of the Bankruptcy Code.

The Bankruptcy Code sets forth different standards for establishing that a plan is "fair and equitable" with respect to a dissenting class, depending on whether the class is comprised of secured or unsecured claims or interests. In general, section 1129(b) of the Bankruptcy Code permits confirmation notwithstanding non-acceptance by an impaired class if that class and all junior classes are treated in accordance with the "absolute priority" rule, which requires that the dissenting class be paid in full before any junior class may receive anything under the plan. In addition, case law surrounding section 1129(b) requires that no class senior to a non-accepting impaired class receives more than payment in full on its claims.

With respect to a Class of Claims that does not accept the Plan, the Debtor must demonstrate to the Bankruptcy Court that either (i) each holder of a Claim in the dissenting Class receives or retains under the Plan property of a value equal to the allowed amount of its Claim, or (ii) the holders of Claims or Equity Interests that are junior to the Claims of the holders of such Claims or Equity Interest will not receive or retain any property under the Plan. Additionally, the Debtor must demonstrate that the holders of Claims that are senior to the Claims of the dissenting Class of Claims receive no more than payment in full on their Claims under the Plan. The Plan is designed to satisfy these standards.

If all the applicable requirements for confirmation of the Plan are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code, except that one or more of Classes of impaired Claims or Equity Interests have failed to accept the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code, the Debtor will request that the Bankruptcy Court confirm the Plan over the dissenting votes of such Classes in accordance with section 1129(b) of the Bankruptcy Code. The Debtor believes that the Plan satisfies the cramdown requirements of the Bankruptcy Code. The Debtor may seek confirmation of the Plan over the objection of dissenting Classes, as well as over the objection of individual holders of Claims or Equity Interests who are members of an accepting Class. There can be no assurance, however, that the Bankruptcy Court will determine that the Plan meets the requirements of section 1129(b) of the Bankruptcy Code.

### 5.    Classification of Claims and Equity Interests

The Debtor believes that the Plan meets the classification requirements of the Bankruptcy Code which require that a plan place each claim or interest into a class with other claims or interests which are "substantially similar."

-33-

## SECTION VI -- CERTAIN RISK FACTORS TO BE CONSIDERED.

HOLDERS OF CLAIMS AGAINST THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED HEREIN BY REFERENCE), PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### A.     Risk That Distributions Will Be Less Than Estimated by the Debtor

The projected distributions and recoveries set forth in this Disclosure Statement are based on the Debtor's estimates of Allowed Claims. The Debtor projects that the Claims asserted against the Debtor will be resolved in, and reduced to, amounts that approximate their estimates. However, there can be no assurance that the Debtor's estimates will prove accurate. Distributions to creditors also will be affected by the amount of Available Cash the Debtor is able to realize from recoveries, if any, from the Causes of Action, as well as the costs of continuing to administer the Chapter 11 Case and to pursue Causes of Action.

Moreover, the Debtor's projection of expenses of administering the estates are based upon a somewhat aggressive timetable. Certain of these costs are incurred on a periodic basis, such that administration costs are directly proportional to the duration of the Chapter 11 Case. The Debtor does not believe that substantial time will be required to administer this estate, but there is a potential risk that a wind-up of its affairs will take longer than expected and therefore cost more.

The Debtor reserves the right to object to the amount or classification of any Claim. Thus, the estimates set forth in this Disclosure Statement cannot be relied upon by any creditor whose Claim is subject to a successful objection. Any such creditor may not receive the estimated distributions set forth herein.

### B.     Litigation Risks

The Debtor does not believe that there are any risks with respect to pending or threatened litigation against it that would significantly or materially negatively affect creditors' recoveries under the Plan.

### C.     Bankruptcy Risks

#### 1.     Objection to Classifications

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class. The Debtor believes that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code. However, there can be no assurance that the Bankruptcy Court would reach the same conclusion.

## 2. Risk of Non-Confirmation of the Plan

Even if Class 3 (Medgenesis Claim) and Class 4 (Equity Interests) vote to accept the Plan, the Plan might not be confirmed by the Bankruptcy Court. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, that the confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization, and that the value of distributions to dissenting creditors and equity security holders not be less than the value of distributions such creditors and equity security holders would receive if the debtor was liquidated under Chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan satisfies all the requirements for confirmation under the Bankruptcy Code. There can be no assurance, however, that the Bankruptcy Court would also conclude that the requirements for confirmation of the Plan have been satisfied.

## 3. Risk that Non-Classified Claims and Other Priority Claims will Not be Paid in Full

The Plan contemplates that Administrative Claims, claims of Professionals for payment of compensation and reimbursement of expenses, Priority Tax Claims and Other Priority Claims will be paid in full in accordance with the requirements of the Bankruptcy Code. Debtor estimates that the amounts allocated for payment of these claims will be sufficient to pay all of such claims in full. However, it is possible that certain claims about which the Debtor is unaware might be asserted in the future, and that such claim(s), if allowed, might cause the aggregate of all such claims to exceed amounts available for payment thereof. The risk therefore exists that these claims might not be paid in full.

## D. STATEMENT CONCERNING INCOME TAX CONSEQUENCES.

Confirmation of a plan can have a number of tax implications upon the holders of Claims and Equity Interests against the Debtor, including, but not limited to, discharge/cancellation of indebtedness and capital gains/losses. Given the relative size of the Debtor's estate and the diverse nature of the holders of Claims and Equity Interests, the Debtor has not undertaken an analysis of the tax consequences of the Plan upon holders of Claims and Equity Interests. Accordingly, creditors and parties in interest should consult competent tax counsel and other professionals for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of a Claim or Equity Interest.

THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS OR EQUITY INTERESTS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER. MOREOVER, THE TAX CONSEQUENCES OF CERTAIN ASPECTS OF THE PLAN MAY BE UNCERTAIN DUE TO, IN SOME CASES, THE LACK OF APPLICABLE LEGAL PRECEDENT AND THE POSSIBILITY OF CHANGES IN THE LAW. NO RULING HAS BEEN APPLIED FOR OR OBTAINED FROM THE INTERNAL REVENUE SERVICE WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF COUNSEL HAS BEEN REQUESTED OR OBTAINED BY THE DEBTOR WITH RESPECT THERETO.

THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THERE CAN BE NO ASSURANCE THAT THE INTERNAL REVENUE SERVICE WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE UPHELD. ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT WITH HIS, HER OR ITS OWN TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL, OR OTHER TAX CONSEQUENCES OF THE PLAN.

**IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this document is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing, or recommending to another party any transaction or matter that is contained in this document.**

Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions to holders of Allowed Claims. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes, and the Debtor shall be authorized to withhold distribution on account of such Claims until the requisite information is received.

If any Allowed Claim holder's distribution is returned as undeliverable, the Debtor will take reasonable steps to attempt to deliver the distribution to the holder of the Allowed Claim. Any holder of an Allowed Claim that does not advise the Debtor that it has not received its, his or her distribution within ninety (90) days after the date of attempted distribution will have its, his or her Claim for such undeliverable distribution discharged and will be forever barred from asserting any such Claim against the Debtor or its property. Distributions must be negotiated within ninety (90) days of the date of distribution. Any distributions which are undeliverable and unclaimed or have not been cashed within the time periods set forth above shall become available for distribution to the holders of Allowed Claims in accordance with the Plan and the holder of an unclaimed or undeliverable distribution shall not be entitled to any further distribution under the Plan.

## E.     ALTERNATIVES TO PLAN.

The Debtor ceased operations in October, 2008 and if the Plan is not confirmed, essentially all of Debtor's Cash may be returned to Medgenesis in accordance with the terms of the pre-petition Medgenesis Transaction. Accordingly, there is no viable alternative to the Plan that would envision a continuation of the Debtor as an ongoing business.

Since there is no alternative to the Plan, the Plan embodies what the Debtor considers to be the best and most cost-effective method of completing the restructuring process, and making distributions to Creditors. If the Plan is not confirmed, then the Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code. In that event, the Debtor would cease its reorganization and distribution efforts and a trustee would be appointed to liquidate and eventually distribute the remaining assets of the estate. The Debtor believes that a liquidation

a lower return to creditors, for the reasons described above, and that the timing of any distributions would be substantially delayed.

## F. CONCLUSION.

The Debtor believes that confirmation and implementation of the Plan will provide each creditor with a greater recovery than he, she or it would receive if the Debtor was to liquidate and distribute its assets under Chapter 7 without the substantial delay that the Debtor believes would be experienced in a Chapter 7 proceeding. Thus, the Debtor recommends confirmation and implementation of the Plan as the best possible outcome for creditors. The Debtor therefore urges holders of impaired Claims and Equity Interests that are entitled to vote to cast their Ballots in favor of the Plan and to evidence such acceptance by returning their Ballots so they will be received by the Voting Agent on or before the Voting Deadline.

Dated: July 11, 2010

Respectfully Submitted,

TOPSPIN MEDICAL, INC.

Zvi Linkovski
Principal Executive Officer and Chairman of the Board

#12624273 v6